ESTATE OF Max MARTINEZ, by and through Charissa Lee Martinez, Personal Representative of the Estate; Charissa Lee Martinez, Max Martinez' daughter, Plaintiffs—Appellants,

v.

CITY OF FEDERAL WAY, a municipal corporation; Miguel Monico, in his capacity as a police officer for the City of Federal Way, and as an individual, Defendants—Appellees.

No. 03–35210.

D.C. No. CV–02–00580–MJP.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 2004.

Decided July 2, 2004.

Richard L. Gemson, Esq., John R. Muenster, Esq., Muenster & Koenig, Seattle, WA, for Plaintiffs-Appellants.

Patricia Ann Richardson, City Attorney, Federal Way, WA, Robert Leslie Christie, Esq., Scott M. Barbara, Esq., Johnson Christie Andrews & Skinner, P.S., Seattle, WA, for Defendants–Appellees.

Before PREGERSON, THOMPSON, and CALLAHAN, Circuit Judges.

## MEMORANDUM *

The appellants appeal the district court's order granting partial summary judgment in favor of Officer Miguel Monico ("Monico") on appellants' state and federal claims arising out of Monico's alleged use of excessive force. They also appeal the court's order dismissing all remaining claims against Monico and the City of Federal Way. We affirm.

### A. Qualified Immunity

An officer may reasonably use deadly force when he "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer[s] or to others." *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). In determining whether a particular use of force was reasonable, the court must view the relevant events from the perspective of a reasonable officer on the scene and must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Viewing the undisputed facts in the light most favorable to the appellants, when Max Martinez ("Martinez") was shot by Boutte and immediately thereafter by Monico, he was raising both arms simultaneously in an "angel wings" fashion while still holding his gun. Autopsy results—

which show a bullet wound traveling from Martinez's left wrist, up his left forearm, and through his neck—indicate that Martinez's left arm was almost parallel to the ground when he was shot by Boutte. Given the "angel wings" testimony, Martinez's right arm would have been raised to a substantially similar position.

Even if Martinez did not intend to harm the officers, it was reasonable for Monico to believe that Martinez posed an immediate threat to Boutte or other officers. It is undisputed that during the confrontation, Martinez was intoxicated, belligerent, and ignored repeated commands by the officers to drop his gun. The reasonableness of Monico's actions is reinforced by the fact that Boutte independently thought that he and other officers were in danger and fired upon Martinez a split second before Monico fired his first shot.

The appellants point to evidence that the officers did not see Martinez disable the safety of his gun, chamber a round, or put his finger on the trigger of the gun. However, this evidence does not raise a dispute as to a genuine issue of material fact. Monico testified that even though he did not see Martinez disable the safety of his gun, he assumed that Martinez had readied the weapon for use when he was in his vehicle. This assumption was not only reasonable, it was appropriately prudent to view the gun as being ready for firing with a chambered round. Whether Martinez's finger was on the trigger is irrelevant. Even if Martinez's finger was not on the trigger, it would only take a fraction of a second for him to place it there.

The undisputed evidence also establishes that Monico acted reasonably in shooting Martinez the second time. After Martinez fell to the ground, Officers Boutte, Monico, and Mairs observed Martinez make move-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

ments as if he were attempting to push himself up off the ground. As this occurred, Monico saw the tip of Martinez's gun and shot him the second time. Etta Hill, one of the civilian witnesses, testified that she did not see any movement by Martinez before the second shot, but she did not say she was watching Martinez the whole time. In fact, she testified that immediately before the second shot, she saw one of the officers approach Martinez then draw away "like something startled him." This testimony is consistent with the officers' account of Martinez's movements and the sighting of his gun as he was apparently attempting to rise from the ground.

The appellants argue that Monico's use of deadly force was unreasonable because he failed to warn Martinez before shooting him. This argument lacks merit. Officers are only required to give a warning "where feasible." *Tennessee*, 471 U.S. at 12, 105 S.Ct. 1694. Verbal warnings are not feasible when lives are in immediate danger and every second matters. Moreover, Officer Parker had warned Martinez previously, "If you brandish a weapon or I see the weapon come up in the air, I'm going to believe that you're going to shoot me and I will shoot you."

The appellants also argue that other means existed for apprehending Martinez as demonstrated by Officer Parker's call for the Projecto Jet. However, at the time Monico fired upon Martinez, the Projecto Jet had not arrived and, given the rapidly evolving chain of events that confronted the officers, no other viable alternative existed for preventing Martinez from inflicting deadly harm on them.

Viewing the undisputed facts in the light most favorable to the appellants, Monico's use of deadly force was objectively reasonable and did not violate Martinez's Fourth Amendment rights. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150

L.Ed.2d 272 (2001). The district court properly determined that Monico was entitled to qualified immunity under federal law. With regard to the state tort claims, Monico was entitled to qualified immunity under Washington law for the reasons given by the district court in its order granting partial summary judgment.

### B. *Failure to Provide Medical Care*

■ The appellants argue that there is a triable issue of fact with respect to their claim that Monico failed to provide prompt and appropriate medical care to Martinez. We disagree.

Viewing the undisputed facts in the light most favorable to the appellants, five minutes, or a little more, elapsed from the time of the second shot to the time Martinez was attended by medical personnel. The failure to provide medical attention for this period of time does not rise to the level of deliberate indifference. The officers, not knowing whether Martinez was going to move again, needed to exercise caution in approaching him, securing his weapon, pulling him out from under the vehicle, and checking for any concealed weapons.

Although Monico failed to perform CPR or give Martinez any other first aid, there is no evidence that CPR or first aid would have been beneficial. Martinez's breathing was labored, but he was breathing. Parker testified that the officers did not apply emergency bandages to Martinez because the amount of apparent bleeding did not call for such a response. There is nothing in the record to the contrary; nor is there anything in the record to indicate that Monico or the other officers could or should have done something else to help Martinez.

### C. *Remaining Claims*

The appellants' remaining claims were properly dismissed in light of the district

court's correct rulings dismissing the claims discussed above.

AFFIRMED.